**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **JASON WEATHERS,** | § | |
|    Plaintiff | § | |
| | § | |
| VS. | § | C.A. NO. C-08-54 |
| | § | |
| **RUTH CANO,** | § | |
|    Defendant | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff, a prisoner proceeding *pro se*, filed this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights under the Eighth Amendment to the United States Constitution were violated when a prison officer placed him in a holding cell with another prisoner whom he feared was going to assault him. On December 2, 2008 defendant filed a motion for summary judgment (D.E. 44). Plaintiff responded to the motion for summary judgment on December 15, 2008 and filed his own motion for summary judgment on January 8, 2009 (D.E. 45, 51).

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is proper in this court because the actions about which plaintiff complains occurred in Bee County, Texas.

## BACKGROUND

Plaintiff currently is incarcerated at the French Robertson Unit in Abilene, Texas (D.E. 1). At the time he filed his law suit he was incarcerated at the Garza East Transfer Unit in Beeville, Bee County, Texas (D.E. 1).

On June 13, 2007 plaintiff was found guilty in a prison disciplinary hearing of engaging in a fight without a weapon with another offender, Larry Burr, following an altercation on June 7, 2007 (Disp. Rept., D.E. 44, Ex. C32). Plaintiff was accused of throwing closed fist punches and the fight resulted in injuries that required first aid treatment (Id.). As part of the investigation, an "Offender Protection Investigation" was conducted. Plaintiff explained that he and Burr were being disrespectful to one another. He said that Burr told him that if he (plaintiff) interfered with his parole eligibility, Burr would kick his ass. Plaintiff told him to do so and Burr then hit him on the head. Plaintiff grabbed Burr by the neck and slammed him down on a day room table (D.E. 44, Ex. B13-14).

When asked why anyone would want to assault or extort him, plaintiff replied "not being extorted just got in to a fight in the dorm." When asked what action should be taken to solve his problem, plaintiff stated, "I don't have any problems[.] Offender Burr was taking (sic) shit to me and hit me." Plaintiff signed a statement saying that the situation had been resolved and he no longer required protection or a transfer (Id.). Both stated that their lives were not in danger and neither feared for his safety if housed in the general population. Prison authorities concluded that both inmates were equal participants in the altercation and both were reassigned to different dormitories (Id.).

Four days after the fight, on June 11, 2007, plaintiff was ordered to go to the administration building to talk to the Unit Classification Committee ("UCC"). When he arrived at the building, he saw Burr in the holding cage, which is an enclosed area where prisoners wait to be called before the UCC (D.E. 1, pp. 4-4a).

A female officer, who plaintiff later identified as defendant Cano, ordered plaintiff to go into the holding cage. Plaintiff did not want to go into the cage because he feared that Burr would attack him. Burr had told plaintiff after their earlier fight that "it wasn't over." Plaintiff explained the situation to Cano, but she called him a "sissy" and ordered him into the cage (Id.). Cano then walked away, leaving plaintiff locked in the cage with Burr for several hours and he was intensely afraid (D.E. 1, p. 4a). Despite plaintiff's misgivings, Burr did not attack him and plaintiff has described no harm that he suffered that day (Id.). Although plaintiff requests relief in the form of money damages, "medical shoes," and medical care for his shoulder, knee and hand, nothing in the record indicates that he sustained any injuries whatsoever (D.E. 45, p. 2).

Plaintiff filed Step 1 and Step 2 grievances complaining about being forced into the holding cell with Burr (D.E. 44, Ex. E44-E47). In both documents plaintiff stated that he thought that the officer endangered his life and/or well-being by placing him in the holding cage. In response to both grievances he was told that the incident was brought to the attention of the UCC to ensure that the situation did not happen again (Id.).

In his federal complaint, plaintiff argues that Cano violated his constitutional rights when she placed him in the holding cage with Burr because she was deliberately indifferent to his safety and recklessly exposed him to an excessive risk of serious harm. In her motion for summary judgment, defendant Cano makes the following arguments: (1) She was not involved in the incident described by plaintiff; (2) She is entitled to Eleventh Amendment

3

immunity for claims brought against her in her official capacity and (3) She is entitled to qualified immunity.

## APPLICABLE LAW

**A. Motion For Summary Judgment**

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See FED.R.CIV.P. 56(c). An issue is material if its resolution could affect the outcome of the action. Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir. 2001). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court will not weigh the evidence or evaluate the credibility of witnesses. Caboni v. General Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The movant bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the movant demonstrates there is an absence of evidence to support the nonmovant's case, the nonmovant must come forward with specific facts showing that

there is a genuine issue for trial.  See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.  To sustain this burden, the nonmovant cannot rest on the mere allegations of the pleadings.  See Celotex, 477 U.S. at 324, 106 S. Ct. at 2553; Caboni, 278 F.3d at 451; FED.R.CIV.P. 56(e).  After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted.  Caboni, 278 F.3d at 451.

**B.  No Personal Involvement**

Plaintiff initially named "Jane Doe" as the defendant in this case (D.E. 1).  On May 13, 2008, the Office of the Attorney General filed a notice advising that it had not been able to ascertain Jane Doe's true identity and asked that plaintiff be ordered to supply additional identifying information.  Plaintiff had identified her only as being an Hispanic female, approximately 5'2" in height, of average weight, with shoulder length brown hair and working in "G-building."  (D.E. 16).  Plaintiff replied that the grievance investigator would have information regarding Jane Doe's identity (D.E. 18).

On July 7, 2008 the Office of the Attorney General advised that by working with a roster from the date of the incident and by obtaining help from the human resources department, it had been able to narrow down the possible defendants to two women working that day.  Plaintiff was allowed to see photographs of both possible defendants and identified Ruth Cano as the defendant (D.E. 23).  Cano was subsequently substituted in the case as the defendant and she filed an answer and the pending motion for summary judgment (D.E. 24, 25, 44).

In support of her motion for summary judgment, Cano stated in an affidavit that she was not involved in the incident about which plaintiff complains. She said that she did not recall the incident and presented evidence in the form of a calendar she kept at the time which showed that she was working in another area of the prison on that day (D.E. 50, Ex. A1-A2).

No where in either plaintiff's response to the motion for summary judgment or in his own motion for judgment does he argue or present evidence that Cano was the woman who placed him in the holding cage. Accordingly, he has failed to raise a fact issue regarding the identity of the defendant and summary judgment should be entered for defendant Cano. In the event the district court does not adopt this recommendation, the defendant's other arguments will be addressed.

**C. Eleventh Amendment Immunity**

Defendant argues that the Eleventh Amendment bars suits against persons in their official capacity and she is correct. Plaintiff denies that he is suing plaintiff in her official capacity (D.E. 45). If plaintiff were suing Cano for money damages in her official capacity, his claim would be barred by the Eleventh Amendment. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Ganther v. Ingle, 75 F.3d 207 (5th Cir. 1996). Any claim plaintiff might make against Cano in her official capacity should be dismissed.

**D. Qualified Immunity**[1]

Defendant argues that she is entitled to the affirmative defense of qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 411 (1982). Once a defendant has asserted qualified immunity, the burden shifts to the plaintiff to overcome the defense. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). To do so, the plaintiff must show that the official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff. Harlow, 457 U.S. at 816, 102 S.Ct. at 2737.

Assessing the defense of qualified immunity is a two-part process. In Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the United States Supreme Court held that a court must first determine whether the facts alleged by plaintiff show the violation of a clearly established constitutional right and then determine whether the defendant's conduct was objectively reasonable, because even if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable. Id., 533 U.S. at 201, 205, 121 S.Ct. at 2156, 2158. The Supreme Court recently receded from Saucier in Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808,

---

[1] Notwithstanding the discussion of the identity of the defendant in this case, it will be assumed for purposes of qualified immunity that Ruth Cano was the person who placed plaintiff in the holding cage.

7

\_\_\_ L.Ed.2d \_\_\_ (2009), holding that the Saucier protocol is not mandatory in all cases and that judges of the district courts and courts of appeal should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first, in light of the circumstances in the particular case at hand. Id., 129 S.Ct. at 818.

### 1.  Establishment of Violation of a Constitutional Right

Using the Saucier test because it fits the circumstances in this case, the first question is whether the facts alleged by plaintiff show the violation of a clearly established constitutional right. To establish a constitutional violation based on a failure to protect claim, the plaintiff must show that: (1) he is incarcerated under conditions posing serious harm; and (2) prison officials were deliberately indifferent to his need for protection. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995).  In order to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer, 114 S.Ct. at 1979; Neals, 59 F.3d at 533.  A "substantial risk of serious harm exists when "society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone willingly to such a risk." Horton v. Cockrell, 70 F.3d 397, 401 (5th Cir. 1995)(citing Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact." Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998)(citing Neals, 59 F.3d at 533).

Plaintiff has failed to establish the violation of a constitutional right in this case. First, he has not shown that he was at risk for serious harm. In the report he gave following the altercation he had with Burr, plaintiff reported that after Burr hit him the first time, plaintiff defended himself ably by grabbing Burr by the throat and slamming him on the table (D.E. 44, Ex. B18). In addition, plaintiff signed a waiver after the fight indicating that he was not in any danger and did not require protection or a transfer (D.E. 44, Ex. B13).

Second, plaintiff has failed to show that Cano was aware of facts from which an inference could be drawn that plaintiff faced a substantial risk of serious harm or that she drew the inference. To the contrary, plaintiff stated when he told Cano he was afraid of Burr, Cano told him not to be a "sissy" and to get in the cage (D.E. 1, p. 4a). Nothing about this exchange indicates that Cano believed that plaintiff was at risk for substantial harm and disregarded the risk. Moreover, even if Cano had been mistaken and plaintiff had been harmed, he still would not have shown that she disregarded a threat. See Domino v. TDCJ, 239 F.3d 752, 756 (5th Cir. 2001)(doctor who did not believe suicide threat was genuine did not show disregard for substantial risk of harm). Based on the foregoing, the facts alleged by plaintiff fail to establish a constitutional violation.

**2. Reasonableness of Conduct**

Even if plaintiff had established violation of a constitutional right, he would have to show that Cano's conduct was objectively unreasonable. The touchstone of the "objectively reasonable" inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the

9

clearly established law. Goodson v. City of Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000). "For a right to be clearly established, there does not have to be a prior case directly on point, but the unlawfulness of the precipitating acts must be apparent in light of the existing law." Hassan v. Lubbock Independent School Dist., 55 F.3d 1075, 1079 (5th Cir. 1995)(citing Anderson, 483 U.S. at 640, 107 S.Ct. at 3039), cert. denied, 516 U.S. 995, 116 S.Ct. 532, 133 L.Ed.2d 438 (1995). "The contours of the right must be sufficiently clear that a reasonable person would understand that what he is doing violates that right." Anderson, 483 U.S. at 640, 107 S.Ct. at 3039.

Cano had no information supporting plaintiff's claim that he would be in danger if he were forced to go into the holding cage. Plaintiff had not availed himself of any of the means in the prison to report that he was in danger and in fact had waived protection from Burr when offered it four days earlier. Even if plaintiff had established violation of a constitutional right by being placed in the holding cage, Cano would have acted reasonably by disregarding his claim in light of the fact that plaintiff had taken no further steps to protect himself.

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that defendant's motion for summary judgment (D.E. 44) be granted. Plaintiff's motion for judgment (D.E. 51) should

be denied. Plaintiff's cause of action against defendant Cano should be dismissed with prejudice.

    Respectfully submitted this 3rd day of March, 2009.

                                                           _____
                                                            B. JANICE ELLINGTON
                                                            UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

    The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

    A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996)(en banc).